IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. FRANCO

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
LUIS A. FRANCO, APPELLANT.

Filed November 12, 2013.    No. A-13-109.

Appeal from the District Court for Hall County: TERESA K. LUTHER, Judge. Affirmed.

Matthew C. Boyle, of Lauritsen, Brownell, Brostrom & Stehlik, for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

IRWIN, PIRTLE, and BISHOP, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Luis A. Franco appeals his convictions for possession of marijuana with intent to distribute and possession of methamphetamine with intent to distribute. On appeal, Franco challenges the sufficiency of the evidence to sustain the convictions, asserts that his jury pool lacked sufficient diversity, and alleges that the State failed to comply with a discovery order. Franco's challenge to the sufficiency of the evidence is presented entirely as a challenge to the credibility of the State's primary witness, and we will not reassess witness credibility on appeal. Franco's other assertions are not supported by an adequate record. We find no merit to Franco's assignments of error, and we affirm.

## II. BACKGROUND

A United Parcel Service (UPS) security supervisor in Omaha, Nebraska, testified at trial that UPS has a "roll port" in Louisville, Kentucky, and that a Louisville narcotics task force "runs dogs through that facility quite often." She testified that when a "dog hits on a package," the task force will notify the UPS facility where the package is being shipped. In February 2012,

she received a call from the Louisville task force about "a particular package that the dog had hit on in Louisville." She testified that the package was scheduled for delivery to the Grand Island, Nebraska, UPS center.

The security supervisor then contacted the "preload supervisor" at the UPS facility in Grand Island and asked her to "pull the package, take it to the office, contact . . . the Grand Island Task Force, [and] fill out [a] seizure form." The preload supervisor then met with a Nebraska State Patrol officer, who completed all of the necessary paperwork to take control of the package.

A Grand Island Police Department officer testified that he was contacted by the Nebraska State Patrol and that he took his drug canine to a State Patrol facility. The officer took his canine to a utility room and deployed the canine to perform "a drug sniff." The canine did not indicate to anything in the room, and the officer removed the canine from the room. The UPS package at issue was then placed into the room, and the officer returned to the room with the canine and deployed the canine to perform another drug sniff. The canine then indicated to the package at issue.

A Nebraska State Patrol officer completed paperwork to obtain a search warrant for the package and for the residence to which the package was addressed, and the officer was fitted with a UPS uniform to complete delivery of the package. A preliminary search of the package revealed marijuana. The officer resealed the package and initiated delivery to the residence.

At the residence, Franco answered the door. Franco was asked twice if he was "Jim Cass," and he responded affirmatively each time. Franco signed for the package. An entry team then entered the residence and secured the package. A more thorough search of the package revealed approximately 2 pounds of marijuana, with an estimated street value of $1,300 to $1,600 and approximately 56 grams of methamphetamine, with a street value of $5,000 to $6,000. The State Patrol officer testified that the amounts of marijuana and methamphetamine were not consistent with personal use and were consistent with amounts to be offered for sale.

The residence was owned by Charles Garner. Garner was given "use immunity" in exchange for his testimony at trial. He testified that Franco had gone to Garner's residence on the day in question, before noon, to put mud flaps on Franco's truck. Garner testified that Franco had said he was expecting a package to be delivered to Garner's residence and that after Franco finished putting the mud flaps on his truck, the two went into Garner's residence and sat down. Garner testified that Franco was wearing some kind of earpiece. According to Garner, there was a knock on the door between 2:30 and 3 p.m., Franco answered the door, and then the door "got beat down." Garner testified that he does not know anyone named "Jim Cass" and that he was not expecting a package. He testified that this was not the first time that Franco had signed for a package delivered to Garner's residence.

Garner testified that other marijuana and methamphetamine was found in his residence, in the top drawer of his dresser. He also testified that he and Franco had both used methamphetamine earlier in the day.

In addition to the drugs, a police scanner was found in Garner's residence. Garner testified that it was not his. The State Patrol officer testified that Garner had indicated that Franco had the earpiece in his ear and that the scanner and earpiece did not belong to Garner.

Franco testified in his own behalf. He testified that he had signed for deliveries at work, regardless of who the specific addressee was, and that he considered it a "standard practice." He testified that he answered the door at Garner's residence, because Garner has knee problems, and that it was just "automatic" for him to respond in the affirmative when asked if he was the addressee of the package. He testified that he had not "processed" that the person delivering the package was asking him to identify himself. Franco testified that after signing for the package, he informed Garner that Garner's package had been delivered.

Franco denied ordering anything under the name "Jim Cass." He testified that the police scanner found at Garner's residence was not his and testified that the earpiece he had been wearing was for a "hands-free [or] Bluetooth" device. He also denied having used methamphetamine with Garner earlier in the day.

Franco was charged with possession of marijuana with intent to distribute and possession of methamphetamine with intent to distribute. A jury returned verdicts of guilty on both charges. Franco now appeals.

## III. ASSIGNMENTS OF ERROR

Franco has assigned three errors. First, he asserts that the district court erred in finding sufficient evidence to sustain the jury's verdicts of guilt. Second, he asserts that the jury pool lacked sufficient diversity. Third, he asserts that the State violated a pretrial discovery order.

## IV. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Franco first asserts that there was not sufficient evidence to sustain the jury's verdicts of guilt. Franco's entire argument on this issue is that the primary witness for the State, Garner, was not credible and that it was more likely the package containing marijuana and methamphetamine was actually intended for Garner. We do not reassess credibility of witnesses on appeal and find this assigned error to lack merit.

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McGuire*, 286 Neb. 494, ___ N.W.2d ___ (2013). In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. *Id.*

In this case, the State adduced evidence indicating that law enforcement was alerted to the presence of drugs in a package addressed to "Jim Cass" at a residential address. The owner of that residence, Garner, testified that Franco had gone to the residence on the day of delivery and had indicated to Garner that he was expecting a package. When the package was delivered, Franco answered the door, affirmatively responded twice when asked if he was "Jim Cass," and signed for the package. The package contained large amounts of marijuana and methamphetamine that, according to testimony, was not consistent with personal use and was consistent with sale or delivery.

The jury believed this testimony. If that testimony is believed, there was clearly sufficient evidence to prove that Franco was guilty of possession of marijuana with intent to deliver and

possession of methamphetamine with intent to deliver. Regardless of whether any other possible explanation might make sense, as Franco asserts on appeal, we do not reassess the credibility of the witnesses or reweigh the evidence presented to the jury. This assigned error is without merit.

## 2. DIVERSITY OF JURY POOL

Franco next asserts that the jury pool lacked sufficient diversity. There is not an adequate record to allow us to address this issue.

Franco's argument on this issue comprises approximately three paragraphs, in which he notes that the jury pool must be sufficiently diverse and present a cross section of the community, asserts that the community in which the trial occurred is diverse, and argues that he was not provided a sufficiently racially diverse jury because of jury selection procedures used by Hall County. There is no argument or assertion to indicate the actual makeup of Franco's jury pool, no argument or assertion about how that makeup compares to the community, and no argument or assertion concerning what the county's selection procedures actually are or how they result in a nondiverse jury pool.

A review of the trial record reveals that Franco made no objection to the jury pool and that there was no discussion on the record concerning the makeup or diversity of the jury pool. There is no way for us, on appeal, to ascertain the racial makeup of the jury pool. It is incumbent upon an appealing party to present a record which supports his or her appeal. See *State v. Seberger*, 284 Neb. 40, 815 N.W.2d 910 (2012). This assigned error is meritless.

## 3. DISCOVERY VIOLATION

Finally, Franco asserts that the State violated a pretrial discovery order. He asserts that the State failed to turn over copies of police reports created during investigation and preparation for trial. Again, there is not a sufficient record to allow us to review this assertion.

Franco argues that police reports existed, but were not provided to him, revealing interviews with Garner and statements made by Garner of which Franco was unaware. He argues that the information in the police reports was necessary for his adequate preparation for trial and access to them would have allowed a "proper, more comprehensive development of his defense at trial." Brief for appellant at 18.

A review of the record reveals no issue was raised to the trial court concerning any discovery violation. Franco never objected to a discovery violation, never moved to compel compliance with any discovery order, and never made any argument concerning his lack of access to any information. There is no record presented to us to support the notion that any police reports existed and/or were not properly disclosed to Franco.

During Garner's testimony, Franco did object to one question, objecting, "hearsay, using information out of the police reports." At that point, an off-the-record discussion was had "in low tones at the bench." The substance of that discussion is not available to us.

As noted above, it is incumbent upon an appealing party to present a record which supports his or her appeal. See *State v. Seberger, supra*. Here, Franco has not provided us with a record supporting his assertion that there was a discovery violation or that it prejudiced his preparation for trial. This assigned error is meritless.

## V. CONCLUSION

We find Franco's assertions on appeal to lack merit. There was sufficient evidence to sustain the verdicts, and we do not reassess the credibility of the witnesses. Franco has not presented a record to support his assertions concerning the diversity of the jury pool or an alleged discovery violation. We affirm.

AFFIRMED.